**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN ROAD & TRANSPORTATION BUILDERS ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY et al., <br><br> Defendants. | Civil Action 11-1713 (RC) |

**MEMORANDUM OPINION**

For the last ten years, the American Road and Transportation Builders Association

("ARTBA") has sought to alter the regulations implementing section 209(e) of the Clean Air

Act.  The Environmental Protection Agency ("EPA") has consistently denied its petitions.  In

2009, the D.C. Circuit dismissed a challenge to one such denial; two other challenges are

currently pending in the courts of appeals.  ARTBA now asks this court to review the EPA's

denial of its petitions.  But only the courts of appeals may review final action taken under the

Clean Air Act, *see* 42 U.S.C. § 7607(b)(1), and so this court dismisses the case for lack of

subject matter jurisdiction.

**I.  BACKGROUND**

In 1990, Congress amended the Clean Air Act to authorize the federal regulation of

emissions from nonroad engines,[1] which power vehicles and mobile equipment from

---

[1] The statute defines "nonroad engine" as "an internal combustion engine (including the
fuel system) that is not used in a motor vehicle or a vehicle used solely for competition, or that is

lawnmowers to locomotives.  Pub. L. No. 101-549, § 213, 104 Stat. 2399, 2500 (*codified at* 42 U.S.C. § 7547).  At the same time, in section 209(e) of the amended Act, Congress preempted state regulation of such emissions.  42 U.S.C. § 7543(e).  Section 209(e)(1) prohibits states from adopting or enforcing "any standard or other requirement relating to the control of emissions" from "new" locomotives or their engines or "new" engines below a certain horsepower that are used in farm or construction vehicles or equipment.  *Id.* § 7543(e)(1).  That bar is absolute, but section 209(e)(2) requires the EPA under certain conditions to "authorize California to adopt and enforce standards and other requirements relating to the control of emissions" from nonroad engines and vehicles not named in section 209(e)(1).  *Id.* § 7543(e)(2)(A).  Other states can then opt in to the California standards.  *Id.* § 7543(e)(2)(B).

In 1994, the EPA published two regulations interpreting the preemptive scope of section 209(e).  One regulation—the "preemption rule"—defined statutory terms and clarified the class of preempted state law, *see* Preemption of State Regulation for Nonroad Engine and Vehicle Standards, 59 Fed. Reg. 36,969, 36,986–87 (July 20, 1994) ("1994 Preemption Rule") (codified at 40 C.F.R. § 85.1602–03 (1995)), while the other—the "interpretive rule"—emphasized the types of state regulation that were permitted without federal authorization, *see* Emission Standards for New Nonroad Compression-Ignition Engines At or Above 37 Kilowatts, 59 Fed. Reg. 31,306, 31,339–40 (June 17, 1994) ("1994 Interpretive Rule") (codified at 40 C.F.R. § 89 subpt. A, App'x A (1995)).  The agency's rationales for the two regulations were nearly

---

not subject to standards promulgated under section 7411 of this title or section 7521 of this title," that is, Clean Air Act sections 111 and 202.  42 U.S.C. § 7550(10).  Most of the provisions concerning nonroad engines also apply to nonroad vehicles, defined as "a vehicle that is powered by a nonroad engine and that is not a motor vehicle or a vehicle used solely for competition," *id.* § 7550(11).

identical.  *Compare id.* at 31,328–31 *with* 1994 Preemption Rule, 59 Fed. Reg. at 36,971–74.  In justifying both the preemption rule and the interpretive rule, the EPA acknowledged the "clear preemption of state regulation of nonroad engines . . . in section 209(e)(1)" and determined that, although "[t]he language of section 209(e)(2) does not state any clear preemption," some preemption was nonetheless implied.[2]  The agency further "noted that section 209(e)(2) of the Act does not prevent California or other states from regulating nonroad engines and vehicles *in use*," and stated its belief that "the requirements of section 209(e)(2) apply only to *new* nonroad engines and vehicles."  1994 Interpretive Rule, 59 Fed. Reg. at 31,330 (emphases added); 1994 Preemption Rule, 59 Fed. Reg. at 36,973 (same).  The preemption rule therefore provided that no state could "enforce any standards or other requirements relating to the control of emission[s] from *new* nonroad engines or vehicles" unless California was first authorized to enforce them.  1994 Preemption Rule, 59 Fed. Reg. at 36,987 (codified at 40 C.F.R. § 85.1603(d) (1995)) (emphasis added).  It defined a "new" engine or vehicle as one which has neither been "placed

---

[2] 1994 Interpretive Rule, 59 Fed. Reg. at 31,330; 1994 Preemption Rule, 59 Fed. Reg. at 36,973.  As the D.C. Circuit explained when the regulation was challenged:

> . . . if no state regulation were preempted, California would have no need to seek authorization for its regulations, and other states would not need to opt in to the California rules.  Thus, the California authorization provision assumes the existence of a category of sources that are subject to preemption.  In other words, states must be preempted from adopting any regulation for which California could seek authorization.

*Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1087–88 (D.C. Cir. 1996) (citations omitted).

into service" nor had its "equitable or legal title . . . transferred to an ultimate purchaser."[3]  The

interpretive rule described the EPA's understanding of "in-use" regulations:

> EPA believes that states are not precluded under section 209 from regulating the use and operation of nonroad engines, such as regulations on hours of usage, daily mass emission limits, or sulfur limits on fuel; nor are permits regulating such operations precluded once the engine is placed into service or once the equitable or legal title to the engine or vehicle is transferred to an ultimate purchaser, as long as no certification, inspection, or other approval related to the control on emissions is required as a condition precedent to the initial retail sale, titling, or registration of the engine or equipment.

1994 Interpretive Rule, 59 Fed. Reg. at 31,339 (codified at 40 C.F.R. § 89 subpt. A, App'x A

(1995)).

An industry group challenged the preemption rule's definition of "new" and its limitation

of section 209(e)(2)'s preemptive effect to new nonroad engines, as well as the interpretive

rule's assertion that section 209(e)(2) did not preempt state regulation of the use of nonroad

engines.  *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075 (D.C. Cir. 1996) ("*EMA*").  This suit was

brought in the D.C. Circuit under Clean Air Act § 307(b)(1), which provides that review of

"nationally applicable regulations promulgated" under the Act "may be filed *only* in the United

States Court of Appeals for the District of Columbia."  42 U.S.C. § 7607(b)(1) (emphasis added).

The D.C. Circuit upheld the definition of "new," ruling that the statutory term was ambiguous

and the agency's interpretation permissible.  *EMA*, 88 F.3d at 1087.  Turning to the question

---

[3]  1994 Preemption Rule, 59 Fed. Reg. at 36,986 (codified at 40 C.F.R. § 85.1602 (1995)).  This definition of "new" did not apply to locomotives and their engines.  *Id.* (codified at 40 C.F.R. § 85.1602 (1995)) ("This definition of *new* shall not apply to locomotives or engines used in locomotives.").  "New" was defined for that purpose in 1998.  *See* Emission Standards for Locomotives and Locomotive Engines, 63 Fed. Reg. 18,978, 18,998 (Apr. 16, 1998) (codified at 40 C.F.R. §§ 85.1602, 85.1603(c) (1998)).

"whether, as the EPA decided, only new nonroad sources are covered by § 209(e)(2), or, as [the industry group] argue[d], both new and non-new sources are covered," *id.* at 1088, the court concluded that Congress had spoken to the issue by omitting the word "new" from § 209(e)(2), *see id.* at 1087–93.  The agency's attempt to limit the scope of the provision was therefore barred by the statutory text.  *Id.* at 1093.  Having established "which nonroad sources the states are preempted from regulating," the Circuit addressed the question of "what sorts of regulations the states are preempted from adopting," *id.*, upholding the EPA's determination that section 209(e)(2) did not preempt state regulation of the use of nonroad engines.  *Id.* at 1094.

The EPA revised its regulations to conform to the Circuit's decision in *EMA*.  *See* Preemption of State Regulation for Nonroad Engine and Vehicle Standards; Amendments to Rules, 62 Fed. Reg. 67,733, 67,735 (Dec. 30, 1997) ("Amendments to Rules") ("Today's direct final rule implements the opinion of the Court regarding the scope of preemption of section 209(e)(2) by amending the language of the implementing regulations to reflect that California must request authorization for its emissions standards and other related requirements for *all* nonroad vehicles and engines.") (emphasis added).  The agency removed the word "new" from the preemption rule's description of the engines whose emissions could not be regulated without federal approval, *see id.* at 67,736 (amending 40 C.F.R. § 85.1603(d)), and revised the language of the interpretive rule's "determination that states are not precluded from regulating the use of nonroad engines," *id.* at 67,734.

In 2002, ARTBA petitioned the EPA to amend its regulations.  Petition to Amend Rules Implementing Clean Air Act § 209(e), EPA Docket HQ-OAR-2004-0008, Doc. 531 (July 12, 2002) ("Petition to Amend Rules").  The association asked the agency to declare that certain

types of state regulation which the revised interpretive rule[4] listed as permissible were in fact

preempted by section 209(e), along with other types of regulation not discussed in the extant

rules.  Petition to Amend Rules at 1.  ARTBA criticized the research and reasoning of the *EMA*

decision at some length and identified allegedly untenable distinctions introduced by an

amendment to the preemption rule dealing with locomotives.  *Id.* at 3 (discussing Emissions

Standards for Locomotives and Locomotive Engines, 63 Fed. Reg. 18,978, 18,998 (Apr. 16,

1998) (amending 40 C.F.R. § 85.1602–03)).  ARTBA also noted that it had successfully

challenged a Texas regulation as preempted by section 209(e).  *Id.* at 1 (describing the holding of

*Engine Mfrs. Ass'n v. Huston*, 190 F. Supp. 2d 922 (W.D. Tex. 2001), *vacated* (5th Cir. Mar. 5,

2002) *and dismissed as moot* (5th Cir. May 14, 2002)).   After the Supreme Court's decision in

*Engine Manufacturers Association v. South Coast Air Quality Management District*, 541 U.S.

246 (2004), ARTBA argued in an email to the EPA that the new precedent compelled the agency

to grant the regulatory revisions that the association was seeking.  ARTBA Petition, EPA Docket

HQ-OAR-2004-0008, Doc. 532 (Apr. 30, 2004).

The EPA put ARTBA's petition out for comment in 2007, *see* Control of Emissions from

Nonroad Spark-Ignition Engines and Equipment, 72 Fed. Reg. 28,098, 28,209–10 (May 18,

---

[4] The revised description of "the authority of states to regulate the use and operation of nonroad engines" read:

> EPA believes that states are not precluded under section 209 from regulating the use and operation of nonroad engines, such as limitations on hours of usage, daily mass emission limits, or sulfur limits on fuel; nor are permits regulating such operations precluded, once the engine is no longer new.

Amendments to Rules, 62 Fed. Reg. at 67,736 (codified at 40 C.F.R. § 89 Subpt. A, Appx. A (1998)).

2007), and rejected it the following year, *see* Control of Emissions From Nonroad Spark-Ignition

Engines and Equipment, 73 Fed. Reg. 59,034, 59,130 (Oct. 8, 2008) ("After reviewing

ARTBA's petition and the comments received regarding the petition, EPA is not adopting the

changes requested by ARTBA in its petition.").[5]  The agency explained that "although EPA does

agree in part with ARTBA's interpretation, EPA does not believe it is necessary or appropriate to

revise its regulations based on ARTBA's petition."  Response to the Petition of ARTBA to

Amend Regulations Regarding the Preemption of State Standards Regulating Emissions from

Nonroad Engines, EPA Docket HQ-OAR-2004-0008, Doc. 921, at 11 (Aug. 21, 2008).  Where

the EPA agreed that certain forms of state regulation unmentioned in its regulations were in fact

preempted by section 209(e), it nonetheless concluded that "the regulations as written are

sufficient and need not be revised" to make that preemption explicit.  *Id.* at 1.  And the EPA

maintained its position that, contrary to ARTBA's reading of the statute, "Congress did not

intend to preempt state and local regulation of the use and operation of nonroad engines under

section 209(e) of the Clean Air Act."  *Id.* at 27 (abbreviation expanded).

ARTBA challenged the denial of its petition before the D.C. Circuit.  *ARTBA v. EPA*, 588

F.3d 1109 (D.C. Cir. 2009).  This challenge was also brought directly to that court under Clean

Air Act § 307(b)(1), which provides that petitions for review of regulations promulgated under

the Act "shall be filed within sixty days from the date notice of such promulgation . . . appears in

the Federal Register," unless the "petition is based solely on grounds arising after such sixtieth

---

[5] At the same time, the EPA recodified the preemption rule at 40 C.F.R. part 1074.  *See*
Control of Emissions From Nonroad Spark-Ignition Engines and Equipment, 73 Fed. Reg. at
59,130 (noting that, with two exceptions not relevant here, the EPA was "not changing the
meaning of these regulations"); *id.* at 59,379–80 (codified at 40 C.F.R. § 1074.1 *et seq.* (2009)).

day." 42 U.S.C. § 7607(b)(1).  The Circuit held that ARTBA's suit was an untimely attack on the 1997 re-promulgation of the preemption and interpretive rules rather than a timely challenge to the EPA's denial of its 2008 petition because Clean Air Act § 307(b)(1) enacted an exception to "[t]he general rule . . . that it is a perfectly valid 'method of obtaining judicial review of agency regulations once the limitations period has run . . . to petition the agency for amendment or rescission of the regulations and then to appeal the agency's decision.'"  *ARTBA*, 588 F.3d at 1112 (quoting *NLRB Union v. FLRA*, 834 F.2d 191, 196 (D.C. Cir. 1987)) (second ellipsis in original).  Because ARTBA had not filed suit within sixty days of either the 1997 re-promulgation or a later event that ripened its claim, the Circuit dismissed the case for lack of subject matter jurisdiction.  *Id.* at 1113–16.

In 2010, ARTBA submitted comments on California's proposed revisions to a portion of its state implementation plan ("SIP"),[6] and "renew[ed] [ARTBA's] petition with respect to the nonroad preemption rules."  ARTBA Comments and Rulemaking Petition Regarding Revision to California State Implementation Plan, EPA Docket R09-OAR-2010-0430, Doc. 14, at 1 (July 6, 2010).  The association sought "EPA's denial of California's SIP revision for the same reasons that ARTBA ha[d] long sought amendment of EPA's rules implementing Section 209(e)."  *Id.* at 2.  Rejecting the petition, the EPA explained that "ARTBA's petition seems to be little more than a renewal of its earlier request for an amendment to EPA's rule implementing Clean Air Act section 209(e)."  Revisions to the California State Implementation Plan, 76 Fed. Reg. 26,609,

---

[6] Under the Clean Air Act, "states must adopt, and submit to the EPA for approval, SIPs that provide for the implementation, maintenance, and enforcement" of the national air quality standards.  *County of Delaware, Pennsylvania v. Dep't of Transp.*, 554 F.3d 143, 145 (D.C. Cir. 2009).

26,611–12 (May 9, 2011).  The agency noted that it had "already reviewed these issues several times and [was] not revisiting these broader issues in this limited proceeding."  *Id.* at 26,612.

On July 8, 2011, ARTBA filed suit in the Ninth and D.C. Circuits.  ARTBA petitioned the D.C. Circuit to review (1) the EPA's approval of the SIP revisions, (2) the agency's refusal to designate its action as having "nationwide scope or effect" under section 307(b)(1) and therefore subject to challenge in the D.C. Circuit instead of the Ninth Circuit, and (3) its denial of ARTBA's petition to amend or repeal the rules concerning the preemptive scope of section 209(e).  *See* Petition for Review, *ARTBA v. EPA*, No. 11-1256 (D.C. Cir. July 8, 2011).  ARTBA petitioned the Ninth Circuit to review only the approval of the SIP revisions.  *See* Petition for Review, *ARTBA v. EPA*, No. 11-71897 (9th Cir. July 8, 2011).  The Ninth Circuit case is currently stayed pending the resolution of the D.C. Circuit case.

On September 22, 2011, ARTBA brought this case "to challenge EPA's final agency action with respect to" the 2008 rulemaking at issue in *ARTBA v. EPA*, 588 F.3d 1109 (D.C. Cir. 2009), as well as the 2011 rulemaking regarding the California SIP revisions, both of which "relate to the preemptive scope of Clean Air Act § 209(e), 42 U.S.C. § 7543(e)."  Compl. ¶ 1.  ARTBA seeks, in essence, a declaratory judgment approving its interpretation of that provision and requiring the EPA to amend its regulations accordingly.  ARTBA also asks this court to void decisions of the United States Supreme Court and the D.C. Circuit.  The association has named as defendants the United States, the EPA, and its Administrator, Lisa P. Jackson, acting in her

official capacity (collectively, "the government").  The government has moved to dismiss the case for lack of jurisdiction.[7]

## II.  LEGAL STANDARD

Sovereign immunity, which shields from suit the federal government, its agencies, and federal officials acting in their official capacities, is "jurisdictional in nature."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (the federal government and its agencies); *Jackson v. Donovan*, 2012 WL 574075, at *1 (D.D.C. Feb. 23, 2012) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)) (federal officials in their official capacities); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").  "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied."  *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  "Indeed, the '[statutory] terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *Meyer*, 510 U.S. at 475 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  By the same token, because "the inferior courts of the United States . . . are creatures of statute," *Owens v. Republic of Sudan*, 531 F.3d 884, 887 (D.C. Cir. 2008), which "may not exercise jurisdiction absent a statutory basis," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005), the terms of jurisdiction-conferring statutes both define and limit a federal court's authority to hear a given case.  The plaintiff bears the burden of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign

---

[7] The government argues in the alternative that ARTBA cannot state a claim on which relief can be granted and that the case is barred by *res judicata*, but the court need not reach those arguments to resolve the motion.

immunity.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Tri-State Hosp.*

*Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) ("A party bringing suit against

the United States bears the burden of proving that the government has unequivocally waived its

immunity."); *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (noting that "a plaintiff

must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary

to survive a Rule 12(b)(1) motion to dismiss").

### III.  ANALYSIS

Section 307(b)(1) of the Clean Air Act "channels review of final EPA action exclusively

to the courts of appeals, regardless of how the grounds for review are framed."  *Virginia v.*

*United States*, 74 F.3d 517, 523 (4th Cir. 1996); *Missouri v. United States*, 109 F.3d 440, 441

(8th Cir. 1997) ("The Clean Air Act . . . channels all petitions for review of EPA actions into the

courts of appeals.") (abbreviation expanded); *see also Massachusetts v. EPA*, 415 F.3d 50, 54

(D.C. Cir. 2005), *overruled on other grounds*, 549 U.S. 497 (2007) ("Section 307(b)(1), 42

U.S.C. § 7607(b)(1), gives this court *exclusive* jurisdiction over 'nationally applicable

regulations promulgated, or final action taken, by the Administrator' under chapter 85 of the

Act.") (emphasis added); *Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 896 (2d Cir. 1989)

("Because Section 307 embodies a grant of *exclusive* jurisdiction, it appears that if the District of

Columbia [Circuit] has jurisdiction over the present action, the district court does not.")

(emphasis added); *Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 25–26

(D.D.C. 2005) ("It is well-settled that subsection 307(b)(1) of the Clean Air Act provides the

*exclusive* means of obtaining review of final actions by EPA under the Clean Air Act.")

(emphasis added) (abbreviation expanded).  This case seeks review of final agency action by the

EPA under the Clean Air Act.  Compl. ¶ 1.  It must therefore be brought in the appropriate court of appeals—where, indeed, ARTBA has already sought identical relief.

In an attempt to avoid that conclusion, ARTBA principally invokes the citizen-suit provision of the Clean Air Act, §304(a)(2), 42 U.S.C. § 7604(a)(2), and the Administrative Procedure Act, 5 U.S.C. §§ 701–706.  The government responds that neither waives the sovereign immunity of the United States nor gives the plaintiff a cause of action. It might have added—and this court is obliged to note—that ARTBA must also identify a source of statutory jurisdiction.  When a party challenges administrative action, the three inquiries are closely related.  For instance, if the Administrative Procedure Act provides a cause of action, then it also provides a waiver of sovereign immunity, and the federal question statute grants jurisdiction to the district courts.  *See Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) ("[T]he APA . . . provide[s] . . . a limited cause of action for parties adversely affected by agency action."); *id.* at 187 ("[W]e hold that APA § 702's waiver of sovereign immunity permits [the plaintiff's] APA cause of action . . . ."); *Road Sprinkler Fitters Local Union 669 v. Herman*, 234 F.3d 1316, 1319 (D.C. Cir. 2000) ("28 U.S.C. § 1331 . . . gives federal courts . . . 'jurisdiction of all civil actions arising under the . . . laws . . . of the United States,' including those brought under the APA.") (quoting 28 U.S.C. § 1331).  If, however, another statute provides an "adequate remedy in a court," 5 U.S.C. § 704, then the APA neither provides a cause of action nor waives sovereign immunity.  *Washington Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993) ("[A]n adequate remedy is available to appellants, and we therefore conclude that appellants have no cause of action under the APA . . . ."); *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) ("The APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy

is available elsewhere.") (quoting *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1992)) (alterations in original); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 947 (D.C. Cir. 2004) ("[T]he waiver of sovereign immunity under § 702 is limited by the 'adequate remedy' bar of § 704."). And if the statute providing the adequate remedy channels review to the courts of appeals, it eliminates the federal question jurisdiction that the district courts would otherwise enjoy. *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 584 (1980). Because statutory jurisdiction, sovereign immunity, and the ability to state a claim are interrelated in this way, the court will analyze them together as it considers each asserted basis for its jurisdiction and ARTBA's claims.

The citizen suit provision of the Clean Air Act authorizes "any person" to sue the EPA in district court "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator . . . ." 42 U.S.C. § 7604(a)(2). In doing so, it provides jurisdiction to the district courts, waives the sovereign immunity of the United States, and establishes a cause of action. *See Royster-Clark*, 391 F. Supp. 2d at 25–26 ("The Clean Air Act provides its own waiver of sovereign immunity and procedures for review . . . .") (abbreviation expanded). To invoke this court's jurisdiction under the citizen suit provision, a plaintiff must point to an "act or duty under [the Clean Air Act] which is not discretionary with the Administrator." The provision "has been construed narrowly," *Monongahela Power Co. v. Reilly*, 980 F.2d 272, 276 n.3 (4th Cir. 1992), because "Congress provided for district court enforcement under section 304 in order to permit citizen enforcement of clear-cut violations by polluters or defaults by the Administrator where the only required judicial role would be to make a clear-cut factual determination of whether a violation

did or did not occur," *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987) (quotation

marks omitted); *see also Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 899 (2d Cir. 1989) ("[T]he

district court has jurisdiction, under Section 304, to compel the Administrator to perform purely

ministerial acts, not to order the Administrator to make particular judgmental decisions.");

*Mountain States Legal Found. v. Costle*, 630 F.2d 754, 766 (10th Cir. 1980) ("Congress . . .

restricted citizens' suits to actions seeking to enforce specific non-discretionary clear-cut

requirements of the Clean Air Act."); *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1355

(9th Cir. 1978) (describing the citizen suit provision as "intended to provide relief only in a

narrowly-defined class of situations in which the Administrator failed to perform a mandatory

function" and "not designed to permit review of the performance of those functions") (quoting

*Wis. Envtl. Decade, Inc. v. Wis. Power & Light Co.*, 395 F. Supp. 313, 321 (W.D. Wis. 1975)).

ARTBA suggests that agencies' "everpresent duty to insure that their actions are lawful," *Pub.

Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990), gives the

Administrator a nondiscretionary duty to grant the petitions that she denied.  ARTBA's theory is

evidently that those petitions merely asked the EPA to bring its regulations into conformity with

statutory law—and, of course, the duty to conform with the law is not discretionary.  If an

allegation of such an abstract duty were enough to satisfy the citizen suit provision, then section

307(b)(1) would mean nothing: any party could challenge regulations promulgated under the

Clean Air Act in district court at any time by arguing that those regulations were contrary to the

statute.  The Clean Air Act clearly forecloses that interpretation.  Because ARTBA seeks

substantive review of EPA regulations rather than an order that the Administrator perform a

purely ministerial act, its case is well outside the scope of the citizen suit provision.

ARTBA next argues that it can bring this suit under the APA.  As discussed above, "[u]nder APA § 704, only 'final agency action for which there is no other adequate remedy in a court [is] subject to judicial review,'" *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 608 (D.C. Cir. 1992) (quoting 5 U.S.C. § 704) (second alteration in original), and "[t]he APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere." *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) (quoting *Transohio*, 967 F.2d at 607) (alterations in original).  The D.C. Circuit, "in determining whether an adequate remedy exists, has focused on whether a statute provides an independent cause of action or an alternative review procedure."  *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005).  Section 307(b)(1) of the Clean Air Act provides just such a procedure.  The fact that, as the Circuit ruled when ARTBA first sought relief there, a particular petition is filed after the statutory period for review does not make the statutory review procedure inadequate.  *Martinez v. United States*, 333 F.3d 1295, 1319–20 (Fed. Cir. 2003) ("The fact that the complaint was untimely filed . . . does not mean that that court could not offer a full and adequate remedy; it merely means that [the plaintiff] did not file his complaint in time to take advantage of that remedy."); *Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998) ("A legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of an opportunity to pursue that remedy."); *Sable Commc'ns, Inc. v. FCC*, 827 F.2d 640, 642 (9th Cir. 1987) (holding that the remedy provided by 28 U.S.C. § 2342 was adequate within the meaning of 5 U.S.C. § 704 when it was the plaintiff's "own inaction which foreclosed review under section 2342").  ARTBA argues that the review procedures of the Clean Air Act are

inadequate because another provision of the Act limits judicial review to "objection[s] . . . raised with reasonable specificity during the period for public comment." 42 U.S.C. § 7607(d)(7)(B). The association argues that many of its objections to the preemption rule and the interpretive rule arose more than sixty days after those rules were re-promulgated in 1997. (ARTBA does not explain why its challenges to the California SIP revisions now pending in the courts of appeals will not provide an adequate remedy as to those objections.) But the Clean Air Act accounts for just such an eventuality, providing that:

> If the person raising an objection can demonstrate to the Administrator that it was impracticable to raise such objection within [the period for public comment] or if the grounds for such objection arose after the period for public comment (but within the time specified for judicial review) and if such objection is of central relevance to the outcome of the rule, the Administrator shall convene a proceeding for reconsideration of the rule and provide the same procedural rights as would have been afforded had the information been available at the time the rule was proposed.

*Id.* The judicial review provision, in turn, allows for the review of petitions based on grounds arising after the statutory period for review has expired. *Id.* § 7607(b)(1). Such grounds include "the occurrence of an event that ripens a claim," although "a petition predicated on any such new event [must] be filed within 60 days of the event." *ARTBA*, 588 F.3d at 1113–14. The D.C. Circuit held that "none of the[] events" that ARTBA cited there and now cites here occurred within sixty days of its petition either to the EPA or to the court of appeals. *Id.* at 1114. Had ARTBA filed its claim no more than sixty days after an event that ripened its claims, those claims would have been heard as timely brought.[8] ARTBA did not do so, and its claims were therefore dismissed. That the association failed to comply with the review procedures of the

---

[8] The D.C. Circuit acknowledged that there is some ambiguity as to whether such claims should first be presented to the Administrator or brought directly to the Circuit, *see ARTBA*, 588 F.3d at 1114, but that ambiguity is not enough to render the review procedure inadequate.

Clean Air Act does not render those procedures inadequate, nor permit ARTBA to bring its claim under the APA.  ARTBA therefore has no cause of action under the APA, and cannot depend upon that statute's waiver of sovereign immunity.

ARTBA raises other arguments, which the court addresses briefly.  There is a narrow exception to sovereign immunity for suits alleging that a federal officer has acted outside of his delegated power, *see Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90 (1949); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996), but "[a] claim of error in the exercise of that power is . . . not sufficient."  *Larson*, 337 U.S. at 690; *see also Royster-Clark*, 391 F. Supp. 2d at 24–25.  There is no doubt that the Administrator had the power to promulgate regulations implementing Clean Air Act section 209(e).  42 U.S.C. § 7543(e) ("The Administrator shall issue regulations to implement this subsection.").  To claim that she erred in doing so is not to state a claim that she acted *ultra vires*.  ARTBA also invokes *Ex parte Young*, 209 U.S. 123 (1908), which is simply the first instance of the theory at work in *Larson*. *See Vann v. Kempthorne*, 534 F.3d 741, 751 (D.C. Cir. 2008) (discussing the "rationale set forth in *Ex parte Young* and described in *Larson*").  Moreover, "since 1976 federal courts have looked to § 702 of the Administrative Procedure Act to serve the purposes of the *Ex parte Young* fiction in suits against federal officers."  *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010) (citation omitted).  In *Leedom v. Kyne*, 358 U.S. 184 (1958), "the Supreme Court held that, even though there is a statutory prohibition against review of representation orders of the National Labor Relations Board, a District Court has jurisdiction under section [28 U.S.C. §] 1331 in the *very limited circumstance* where the Board has clearly violated an express mandate of the statute and the plaintiff has no alternative means of review."  *Telecomm.*

17

*Research & Action Ctr. v. FCC*, 750 F.2d 70, 78 (D.C. Cir. 1984).  ARTBA has pointed to no "express mandate of the statute" and, as discussed above, it has an alternate means of review. ARTBA next invokes the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, which is not a basis for federal jurisdiction.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72; *see also Motor Vehicle Mfrs. Ass'n v. Costle*, 647 F.2d 675, 677 n.3 (6th Cir. 1981) (per curiam) ("Neither the Mandamus Act, the Declaratory Judgment Act, nor a district court's federal question jurisdiction authorizes review . . . in the district court in light of the exclusive grant of jurisdiction to the United States Court of Appeals for the District of Columbia by Section 307(b)(1) of the Clean Air Act.").  Finally, ARTBA urges the court to exercise its general equity jurisdiction.  But "[i]t is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law . . . ." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (ellipsis and internal quotation marks omitted).  The court emphasizes once more that the Clean Air Act gave ARTBA an adequate means of judicial review.

## IV.  CONCLUSION

The Clean Air Act gives the courts of appeals exclusive jurisdiction over the claims that ARTBA would raise here.  In doing so, it provides an adequate remedy at law.  There is no basis for jurisdiction over ARTBA's claims in this court, and no applicable waiver of the federal government's sovereign immunity.  The court will therefore grant the government's motion to dismiss the case for lack of jurisdiction.

Rudolph Contreras
United States District Judge

Date: June 7, 2012